## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| BROTHERHOOD MUTUAL INSURANCE COMPANY, as subrogee of RIVER VALLEY CHRISTIAN FELLOWSHIP | ) ) ) ) | |
| Plaintiff, | ) ) | 05 C 3408 |
| v. | ) ) ) | Judge Kennelly Magistrate Judge Mason |
| ERVIN CABLE CONSTRUCTION, LLC, GARY PASCO Individually and d/b/a PASCO CABLE COMPANY, STEVEN GAMMELL, Individually and d/b/a S.A. GAMMELL CONSTRUCTION, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFF BROTHERHOOD MUTUAL INSURANCE COMPANY'S RESPONSE TO GARY PASCO'S MOTION FOR SANCTIONS

Plaintiff, BROTHERHOOD MUTUAL INSURANCE COMPANY, ("Brotherhood"), by and through its counsel William B. Weiler, Abosede O. Odunsi and Swanson, Martin & Bell LLP, responds to Gary Pasco's motion for sanctions pursuant to Federal Rule of Civil procedure 11 as follows:

### INTRODUCTION

This subrogation action arises out of a negligence claim brought by Brotherhood on behalf of its insured, River Valley Christian Fellowship ("Church") against the Defendants. The Church sustained extensive water damage after a cable company broke a nearby underground sewage pipe while installing a telecommunications cable in Bradley, Illinois. All three defendants – Ervin Cable Construction, LLC, Pasco Cable Company and S.A. Gammell Construction – had contracted to lay cable in Bradley, Illinois before the flooding at the Church. Following an investigation, Brotherhood filed the instant lawsuit against Ervin Cable

Construction, LLC, ("Ervin") and Gary Pasco individually and d/b/a Pasco Cable Company ("Pasco"), on behalf of the Church. Plaintiff subsequently added Steven Gammell, individually and d/b/a/ S.A. Gammell Construction ("Gammell") after learning of its involvement from Pasco. On July 19, 2006, Plaintiff reached an agreement with Gammell to settle the case.

Still outstanding, however, is the instant motion for sanctions filed by Pasco against Abosede Odunsi ("Odunsi"), one of the attorneys for Brotherhood, her law firm Swanson, Martin & Bell LLP and Brotherhood ("Respondents"). In his motion for sanctions, Pasco alleges that the Respondents: (1) did not contact him prior to filing the complaint; and (2) refused to voluntarily dismiss him from the lawsuit before the completion of discovery. Pasco claims that this conduct is sanctionable under FRCP 11. Pasco's claims are incorrect for several reasons.

First, Respondents properly investigated the facts of the case and learned that Pasco had, in fact, signed a subcontract agreement with Ervin to lay the cable at issue in the Complaint. Second, on June 1, 2006, this Court imposed a stay of discovery to facilitate the parties' settlement discussions. Brotherhood, therefore, was never able to fully evaluate Pasco's actual involvement in the Church's damages before the case was settled. As such, Respondents' conduct was well-grounded in fact, legally tenable and not interposed for any improper purpose, as required by FRCP 11. Therefore, Pasco's motion for sanctions must fail.

## STATEMENT OF FACTS

### A.    Underlying Subrogation Claim

On June 11, 2004, the Church sustained extensive damage when a sewage surcharge forced water and waste material into the Church's sanctuary through toilets and floor drains. (A copy of William Weiler's affidavit is attached as Exhibit A at ¶2). Brotherhood, the Church's insurer, paid $182,370.92 to repair the facility, including costs related to emergency

decontamination, plumbing, carpentry and painting. *Id.* Brotherhood's investigation to determine the cause of the flooding included hiring Crawford and Co. ("Crawford"), a casualty adjusting company, to assist with the investigation. *Id.* at ¶3. The Crawford adjuster contacted Bobby Cullins ("Cullins"), the Superintendent of Building Standards and Utilities in the Village of Bradley. *Id.*

Cullins had discovered a broken underground sewage pipe approximately ½ mile from the Church. *Id.* The force of a cable line drilled through the sewage pipe caused the break. *Id.* at ¶3. As a result, rain water flooded the sewage system, causing a surcharge that backed up and flooded the Church. *Id.* Documents from the Village of Bradley indicated that it incurred over $7,000 in expenses to repair the broken sewage line. *Id.* at ¶4. These costs were paid by Ervin. *Id.* However, the documents did not confirm which company actually damaged the sewage pipe. *Id.*

Brotherhood also contacted Ervin requesting reimbursement of the $182,370.82 paid to the Church for repairs. *Id.* Ervin forwarded the claim to Pasco's insurance company because Ervin had subcontracted the Bradley cable installation project out to Pasco. *Id.* at ¶5. When neither Ervin nor Pasco's insurer would reimburse Brotherhood for its expenses, Brotherhood forwarded the file to William Weiler ("Weiler"), a partner at Swanson, Martin & Bell LLP, to initiate a subrogation action against Ervin and Pasco. *Id.* Upon receipt of the file, Weiler reviewed the investigation materials, including the information from Crawford, and filed the Complaint on behalf of Brotherhood against Ervin and Pasco. *Id.*

**B.     Case History**

**1.     Procedural History**

Brotherhood filed the underlying subrogation action against Ervin and Pasco on June 28, 2005.[1] (Brotherhood's complaint is attached as Exhibit B). On July 8, 2005, Ervin appeared and answered Brotherhood's complaint on August 4, 2004. (Ervin's Appearance and Answer are attached as Group Exhibit C). On September 7, 2005, Pasco appeared and requested additional time to answer the complaint. (Pasco's appearance and Motion for Extension of Time are attached as Group Exhibit D). Shortly thereafter, Pasco's counsel, Peter Berman ("Berman") advised Weiler that although Pasco had signed a contract to lay cable in Bradley, Illinois, he later subcontracted the project out to Gammell. (*See* Weiler's affidavit, attached as Exhibit A at ¶6). Based on this representation, Brotherhood filed its Second Amended Complaint naming Gammell as a defendant on September 20, 2005. (Brotherhood's Second Amended Complaint is attached as Exhibit E). On October 7, 2005, Pasco filed an answer to Brotherhood's complaint and a crossclaim against Gammell. (Pasco's Answer and Crossclaim Against Gammell are attached as Group Exhibit F).

Sometime thereafter, Berman approached the undersigned counsel Weiler and Odunsi about voluntarily dismissing Pasco from the lawsuit, claiming that Pasco: (1) was in extreme financial straits and unable to bear the costs of litigation; and (2) had no involvement in the project at issue in the complaint. (*See* Weiler affidavit at Exhibit A at ¶7; Odunsi affidavit at Exhibit G at ¶7). During a series of telephone conversations, Weiler advised Berman that until Weiler was convinced who was responsible for the damage at the Church, voluntary dismissal was not an option. (*See* Weiler's affidavit, attached as Exhibit A at ¶7). At the very least, Weiler

---

[1] On July 12, 2005, German Mutual Insurance Company filed a declaratory judgment action against Pasco, Brotherhood and Ervin seeking a finding that it was not obligated to provide insurance coverage to Pasco. According to the Complaint, Pasco had misrepresented various facts on his insurance application.

explained, he wanted to review defendants' discovery answers and possibly depose the party

defendants to determine the involvement of each party before he would consider voluntary

dismissal. *Id.*

Gammell appeared on November 18, 2005. (Gammell's appearance is attached as

Exhibit H). On December 8, 2005, Gammell answered Brotherhood's complaint, raising an

affirmative defense that the damage to the sewage line was caused by the negligence of others.

(Gammell's Answer is attached as Exhibit I at p.3). Gammell also answered Pasco's crossclaim,

denying, *inter alia*, the claims Pasco did not retain the right to control Gammell's work.

(Gammell's Answer to Pasco's Cross Claim is attached as Exhibit J).

On December 12, 2005, all counsel of record appeared in Judge Kennelly's chambers for

an initial status conference. (The December 12, 2005 order is attached as Exhibit K). Stuart

Rappaport ("Rappaport"), counsel for Gammell, advised the Court that if discovery revealed that

his client caused the damage at issue in the lawsuit, he would likely settle the case. (*See*

Odunsi's affidavit at Exhibit G at ¶8). Judge Kennelly instructed Brotherhood to issue a revised

settlement demand and imposed a discovery schedule. *Id.* On January 31, 2006, all counsel of

record appeared in court for status. (The January 31, 2006 order is attached as Exhibit L). When

Judge Kennelly learned that the defendants had failed to respond to Brotherhood's revised

settlement demand and outstanding discovery, he ordered immediate compliance. (*See* Odunsi

affidavit at Exhibit G at ¶8).

On February 16, 2006, all counsel of record had a telephone conference with Judge

Kennelly regarding the case status. (The February 16, 2006 order is attached as Exhibit M).

Rappaport revealed that Gammell last installed cable in Bradley on December 19, 2006, six

months before the Church was flooded. (*See* Odunsi affidavit at Exhibit G at ¶10). Thereafter,

settlement discussions were abandoned and Judge Kennelly instructed the parties to continue with discovery. *Id.*

### 2.    Discovery

Pasco's discovery answers stated that he did not he did not retain the right to manage the project. (Pasco's discovery responses are attached as Group Exhibit N). However, Pasco's contract with Gammell contained the following provision:

> **Right to Withhold Payment**: In additional to Retainage, Contractor shall have the right to withhold payment for defective Work not remedied, failure of the Work to confirm to the Contract Documents or other failure of Subcontractor to comply with the terms and conditions of the Contract Documents. Contractor shall be entitled to withhold such amount as may be necessary, in Contractor's good faith opinion, to protect Contractor from loss due to defects, non-performance or failure to comply. If such deficiencies are not properly corrected after written notice, Contractor may correct such deficiencies at Subcontractor's expense and deduct all costs incurred from payment due to Subcontractor. The withholding by Contractor of any amounts otherwise due to Subcontractor shall not enable Subcontractor to stop the Work or terminate this Agreement.

(The contract between Pasco and Gammell is attached as Exhibit O).

Brotherhood also subpoenaed records from the Joint Utility Locating Information for Excavator ("J.U.L.I.E."), an organization created pursuant to the Illinois Utilities Facilities Damage Prevention Act, 220 ILCS 50/1 *et. seq*. ("Act"). (The J.U.L.I.E. records are attached as Group Exhibit P). The Act requires contractors to call a toll-free number to report the location of future excavation jobs and identify the location of underground utilities, including sewer lines. (The Act is attached as Exhibit Q). Contrary to Pasco's discovery responses denying involvement, the subpoenaed J.U.L.I.E. records document three calls from Pasco to locate underground utilities for the site at issue in Brotherhood's Complaint. (*See* J.U.L.I.E. records at Exhibit P).

6

On May 9, 2006, Odunsi deposed Bobby Cullins, Superintendent of the Village of Bradley Building Standards and Utilities. (Mr. Cullins' deposition transcript is attached as Exhibit R). Cullins testified that a telecommunications cable had pierced an underground sewage pipe, allowing rain water to enter the sewage system, ultimately causing sewage backup and flooding at the Church. *Id.* at p. 13-18, 28. In Cullins' opinion, the cable line broke the sewage pipe in December 2003; however the sewage system did not surcharge until after the ground thawed with the advent or warmer weather and several rain events in Bradley. *Id.* at p. 28-9. Cullins confirmed that Ervin paid the Village of Bradley for the fees it incurred in repairing the broken sewage pipe. *Id* at p. 20, 93-94. However, he did not know which defendant was responsible for the damage. *Id* at 93-94.

Following Cullins' deposition, Rappaport told Weiler that he would contact his client's insurer in an effort to obtain settlement authority, as it appeared that Gammell was responsible for the damage based on Cullins' deposition testimony. (*See* Weiler's affidavit at Exhibit A). On May 25, 2005, Gammell petitioned the Court for an order staying discovery in an effort to settle the case. (Gammell's motion to stay discovery is attached as Exhibit S). The discovery stay was entered on May 30, 2006. (May 30, 2006 order is attached as Exhibit T). Berman offered no objection to the motion. (*See* Gammell's Agreed Motion to Stay Discovery at Exhibit S).

### 3. Pasco's Motion Practice

During the Court imposed discovery stay, Pasco presented a flurry of motions: (1) for leave to delete paragraphs 16-18 of Pasco's crossclaim against Gammell; (2) to continue the June 27, 2006 status hearing; and (3) to modify the May 30, 2006 Order Staying Discovery. (Pasco's motions are attached as Group Exhibit U). On June 21, 2006, Judge Pallmeyer lifted the discovery stay and ordered Brotherhood to answer Pasco's supplemental discovery by July 7,

2006. (The June 14, 2006 order is attached as Exhibit V) On July 7, 2006, Pasco filed the instant Rule 11 motion for sanctions against Respondents. (Pasco's motion for sanctions is attached as Exhibit W). Meanwhile, settlement discussions were ongoing between Brotherhood and Gammell. (*See* Weiler affidavit at Exhibit A at ¶8)

Gammell and Brotherhood agreed to the terms of a settlement on July 19, 2006. *Id.* That day, Brotherhood's counsel faxed correspondence to Berman advising him of the settlement and requesting that he withdraw the motion for sanctions. (A copy of Brotherhood's July 19, 2006 correspondence is attached as Exhibit X). Berman refused. (A copy of Berman's July 20, 2006 correspondence is attached as Exhibit Y).

## ARGUMENT

This Court must deny Pasco's motion for sanctions because the Respondents' conduct comports with FRCP 11. When the complaint was filed, Brotherhood's counsel believed that the allegations against Pasco were well-grounded in fact and law, given that Pasco had entered into a contract to perform the work that caused the damage to the Church. (*See* Weiler affidavit at ¶2-5; Odunsi affidavit at ¶5. Moreover, contrary to Pasco's claims, FRCP 11 does not require Brotherhood's counsel to contact Pasco before filing the lawsuit. Finally, a discovery stay was entered on May 30, 2006, and the case settled shortly thereafter. As a result, Brotherhood's counsel was not able to fully investigate Pasco's involvement in the excavation project in Bradley that caused the flooding at the Church.

Federal Rule of Civil Procedure 11 requires that any papers filed with the court are signed by an attorney, certifying that the attorney believes the filing to be "well-grounded in fact, legally tenable, and not interposed for any improper purpose." *See* Fed. R. Civ. P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (internal quotations omitted). If an attorney

files documents without such a belief, he faces sanctions potentially including payment of the other parties' expenses and fees. *Id.* The central purpose of Rule 11 is to deter baseless or frivolous filings and thereby streamline the administration and procedure of the federal courts. *Id.* Hence, the focus of a Rule 11 motion is what counsel knew at the time the complaint was filed, not what subsequently was revealed in discovery. *See Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1014 (2004). Rule 11 sanctions are not imposed merely for bringing a suit that ultimately fails. *Id.*

In considering whether sanctions are appropriate, this Court evaluates "whether the individual's conduct was reasonable under the circumstances." *International Union, UAW v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005) (citing *Mihalik v. Pro Arts, Inc.*, 851 F.2d 790, 792 (6th Cir. 1988). This reasonableness test presents a mixed question of law and fact; on review, the court considers whether the determination was an abuse of discretion. *Id.* This Court must "avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.'" *Economy v. R.J. Reynolds Tobacco Co.*, 1993 U.S. Dist. LEXIS 21067, *7 (N.D. Ohio Jan.7, 1993) (citing *INVST Financial Group v. Chem-Nuclear Systems*, 815 F.2d 391, 401 (6th Cir. 1987).

## I.     Respondents' Conduct Is Not Sanctionable Pursuant to FRCP 11 Because They Had Reason To Believe That Pasco May Have Caused The Break In The Sewage Line At Issue In The Complaint Was Reasonable.

In Pasco's motion for sanctions, he claims that "there is no evidence that either Odunsi or Brotherhood made a reasonable inquiry to determine whether Pasco could be held liable for the damages the Church allegedly sustained before" the complaint was filed. (*See* Pasco's sanction motion at Exhibit W ¶2). Pasco does not cite any legal authority to support this claim and instead relies solely on an affidavit from Pasco stating that he was never contacted prior to the

initiation of the underlying lawsuit. *Id.* However, Respondents' contact with Pasco before filing the complaint has no bearing on the fact that Brotherhood counsel's believed the allegations against Pasco were "well-grounded in fact, legally tenable, and not interposed for any improper purpose." *See* Fed. R. Civ. P. 11; *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. at 393.

Respondents learned through their pre-suit investigation that Pasco had entered into a contractual agreement with Ervin to lay cable in Bradley, Illinois. (*See* Weiler's affidavit at Exhibit A at ¶4). The investigation also revealed that: (1) a telecommunications line had been pushed through a sewage pipe; (2) the telecommunications line caused the sewage line to break, resulting in damage at the Church; and (3) Ervin subcontracted the cable installation work in Bradley out to Pasco. *Id.* at ¶3-5. Based on this information, Respondents formed a reasonable good faith belief that Pasco was a proper defendant. Therefore, Pasco's motion should be denied.

## II. Respondents Did Not Violate FRCP 11 By Not Dismissing Pasco Before Discovery Was Complete.

Despite the fact that the case settled before discovery was complete, Pasco also claims that Respondents violated FRCP 11 because they did not voluntarily dismiss Pasco at his request. (*See* Pasco's Motion for Sanctions attached as Exhibit W at ¶41-44). Again, Pasco's arguments are unsupported by fact and law. Rule 11 does not require an attorney to dismiss a defendant, if the attorney has a reasonable basis to believe the defendant might have liability. *See* Fed. R. Civ. P 11.

Even assuming *arguendo* that Respondents were required to voluntarily dismiss Pasco during discovery, however, the evidence collected to date shows that Pasco, despite his protests to the contrary, *was* involved in the project. Specifically, subpoenaed records from J.U.L.I.E. confirm that Pasco contacted J.U.L.I.E. three separate times regarding the location of

underground utilities in Bradley before the project began, as required by Illinois law. *See* Illinois Underground Utilities Facilities Damage Prevention Act, 220 ILCS 50/1 *et. seq.* Moreover, the "Right to Withhold Payment" section of contract between Pasco and Gammell shows that Pasco retained some control over Gammell's work. Although one who hires an independent contractor is generally not liable for the negligence of its independent contractor, an exception exists when the hiring party retains some control over the subcontractor's work. Restatement (2d) of Torts §414 provides:

> One who entrusts work to an independent contractor, but who retains the control of any part of the work, is subject to liability for physical harm to others for whose safety the employer owes a duty to exercise reasonable care, which is caused by his failure to exercise his control with reasonable care.

*See* Restatement (2d) of Torts, §414, at 387 (1965). This section of the Restatement has been adopted in Illinois. *See Shaughnessy v. Skender Construction Co.*, 342 Ill. App. 3d 730, 737, 794 N.E.2d 937, 942 (1st Dist. 2003); *Haberer v. The Village of Sauget,* 158 Ill. App. 3d 313, 318-319, 511 N.E.2d 805, 808 (5th Dist.1987);

Respondents were not able to determine the extent to which Pasco retained control over the project because of the discovery stay entered by this Court on May 30, 2006 and the subsequent settlement on July 19, 2006. When the discovery stay was entered, only one deposition had proceeded - Village of Bradley employee, Bobby Cullins. None of the parties to the lawsuit, including Pasco, were ever deposed.

While the case settled before Pasco's involvement was fully determined, the J.U.L.I.E. records provided evidence that Pasco was involved in the project and may have some liability.[2] Moreover, FRCP 11 does not imposes an obligation to voluntarily dismiss Pasco simply based

---

[2] For example, whether Pasco failed to provide adequate information about the location of the exaction site to allow for the identification of the underground sewage pipe

on his written discovery responses, particularly given the right to control provision of the governing contract and his contacts to J.U.L.I.E. As such, Pasco's claim that this Court should sanction Respondents because they would not voluntarily dismiss him from the lawsuit is unfounded.

## CONCLUSION

As demonstrated above, the Respondents' conduct in this case is not sanctionable. The facts are clearly distinguishable from those cases where FRCP 11 sanctions were imposed.[3] This Court tends towards imposing sanctions where plaintiffs file complaints with little effort to confirm the veracity of the allegations or determine a legally tenable cause of action supporting its factual claims. By contrast in this case, the Respondents' conduct comported with the requirements of FRCP 11. Before filing the suit, Respondents' investigation revealed that: (1) Pasco had signed a contract to lay cable in Bradley, Illinois; (2) a cable line breached a public sewer pipe; and (3) the break likely caused the flooding at the church. (*See* Weiler's affidavit, attached as Exhibit A at ¶3).

These facts, which are still undisputed, were sufficient evidence to name Pasco as a defendant in this lawsuit. Additionally, the discovery collected before the stay was imposed showed that Pasco was involved with the work at issue and as such, Respondents' decision to keep Pasco in the lawsuit was reasonable. In light of these facts, Pasco has failed to demonstrate

---

[3] *See Hass v. Rico Enter.*, 2004 U.S. Dist. LEXIS 11189, 7-17 (D. Ill. 2004)(Court upheld a grant of sanctions against a *pro se* plaintiff who alleged that the defendants had conspired to, *inter alia*, violate his Due Process rights by "fixing" the outcome of his dissolution of marriage and child custody proceedings in the Circuit Court of DuPage County, Illinois, concluding that "the DuPage Courts are a lucrative shakedown racketeering Enterprise operating under color of law."); *Innkeepers' Telemanagement & Equip. Corp. v. Hummert Management Group*, 1994 U.S. Dist. LEXIS 16075, 15-28 (D. Ill. 1994)(Court imposed sanctions against a plaintiff who knew the allegations contained in the complaint were false at the time the complaint was filed).

that Respondents' conduct towards Pasco was unreasonable pursuant to FRCP 11 and his motion must be denied.

Respectfully submitted,

_____
One of the attorneys for plaintiff
Brotherhood Mutual Insurance Company,
as subrogee of River Valley Christian Fellowship

William Weiler – ARDC # 6202075
Abosede Odunsi – ARDC # 6275631
Swanson, Martin & Bell, LLP
One IBM Plaza
330 North Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100